IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01884-CMA-MJW

WERNER INVESTMENTS, LLC,

Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

Defendant.

**RECOMMENDATION ON
AMERICAN FAMILY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
PLAINTIFF'S BAD FAITH AND STATUTORY CLAIMS (Docket No. 16)**

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case issued by Judge Christine M. Arguello on July 22, 2011 (Docket No. 6).

In this diversity action, plaintiff, Werner Investments, LLC, asserts the following, as outlined in the Final Pretrial Order (Docket No. 22). Plaintiff filed a hail/wind claim with defendant, American Family Mutual Insurance Company ("AFMIC"), following a hail storm that occurred on July 21, 2009, for alleged damage to the roofing at an apartment complex plaintiff owned in Arvada, Colorado. In May 2010 the parties agreed to go to appraisal on the hail claim, and on July 26, 2010, an appraisal award was entered for $2,000.00, but it stated it related only to the hail claim. In October 2010 plaintiff hired DGA Adjusters who inspected the roof and determined that it also suffered catastrophic

wind lift damage. DGA Adjusters put defendant on notice that it wished to re-open the claim to adjust the wind damage, but defendant took the position that the $2,000 hail award was final, and it was not going to consider the wind claim. DGA Adjusters, however, convinced defendant's adjuster that wind was never considered in the appraisal process, and she instructed DGA Adjusters to send a wind damage report so that the wind claim could be considered. On December 2, 2010, DGA Adjusters sent a report to defendant with photos and commentary showing the extent of the wind damage.

About two weeks later, however, defendant informed DGA Adjusters that it was denying the claim "based on the appraisal award." Defendant further said that if plaintiff wanted to open a new claim and claim wind damage, it could do so. Doing so, however, would subject plaintiff to a new deductible.

After suit was filed in June 2011, defendant retained Gimple Roofing to inspect the roof on October 4, 2011. Gimple generally took the position that the only wind damage on the roof he would consider to be covered by the policy would be instances where shingles were missing, torn, or creased. Despite evidence of many shingles on the roofs suffering broken shingle seals, Gimple took the position that broken shingle seals are not evidence of covered wind damage, and defendant has relied on this opinion to continue to deny the claim. Plaintiff believes that opinion is wrong and unreasonable.

Plaintiff also retained the services of Forensic Building Science, Inc., and its principal, Tom Irmiter, to inspect plaintiff's buildings. Mr. Irmiter determined there was extensive wind damage to the shingles on the roof, which were caused by the storm,

and he opined that Gimple ignored or did not take into account much, if any, of the damage Irmiter found on the roof. He estimated the damages to be approximately $173,823.65.

Plaintiff brought three claims for relief: (1) breach of contract, (2) bad faith, and (3) violation of §§ 10-3-1115, 1116, C.R.S. , for denying or delaying payment without a reasonable basis. (Docket No. 2).

Now before the court for a report and recommendation is the defendant American Family's Motion for Partial Summary Judgment on Plaintiff's Bad Faith and Statutory Claims. (Docket No. 16). Plaintiff filed a response (Docket No. 18),[1] and defendant filed a reply (Docket No. 19). The court has very carefully considered all of these motion papers as well as applicable Federal Rules of Civil Procedure and case law and has taken judicial notice of the court file. The court now being fully informed makes the following findings, conclusions, and recommendation.

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the

---

[1] The court notes that the response (Docket No. 18) does not comply with Judge Arguello's Civil Practice Standards section III(G)(5) because it does not provide a Response to Undisputed Material Facts with admissions or denials made in paragraphs numbered to correspond with defendant's paragraph numbering.

4

County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Id. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

Here, defendant moves for partial summary judgment on plaintiff's bad faith and

5

statutory claims (Claims 2 and 3). However, plaintiff states in its response that "[a]fter completing discovery, Plaintiff at this time agrees to voluntarily dismiss its common law bad faith claim and therefore confesses in part Defendant's motion for partial summary judgment." (Docket No. 18 at 2). Therefore, the only claim that will be discussed below is plaintiff's third claim for relief which alleges a violation of §§ 10-3-1115 and 1116, C.R.S.

Under Colorado statute, § 10-3-1115, C.R.S., "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first- party claimant." The statute explains that "an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." § 10-3-1115(2), C.R.S. Similarly, § 10-3-1116, C.R.S., states that "[a] first-party claimant as defined in §10-3-1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." § 10-3-1116, C.R.S.

Defendant first asserts that the plaintiff's § 10-3-1115 claim fails because there are no "benefits owed" within the meaning of the statute. More specifically, defendant contends:

> With respect to a claim for "first-party" benefits under § 10-3-1115, the plain language of the statute provides that it applies only to "benefits owed." The amount of benefits owed–or stated differently, the extent of damages caused by the July 20, 2009 hail storm–has not been determined. Although American Family has provided Plaintiff with an estimate, and a neutral umpire has provided Plaintiff with an estimate, the amount of that estimate is below Plaintiff's $5,000 deductible. While Plaintiff disagrees with American Family's estimate of the hail damage, Plaintiff has commenced this lawsuit to have a jury make that

> determination. Until the jury makes such a determination, there are no benefits "owed" to Plaintiff. Simply put, while § 10-3-1115 prevents the unreasonable delay or denial of "benefits owed," it does not alter how the amount of benefits owed is determined, which is either by agreement or by a legal proceeding. *See, e.g.,* **Bowen v. Farmers Ins. Exch.**, 929 P.2d 14 (Colo. App. 1996) (holding that an insured is not legally entitled to recover damages until agreement is reached or an award is rendered).

(Docket No. 16 at 20). Recently, however, Judge Arguello "'reject[ed] this illogical argument out of hand,' as it has done previously." Windsor Court, LLC v. American Family Mutual Ins. Co., Civil Action No. 11-cv-01904-CMA-KLM, 2013 WL 799589, at *4 n.5 (D. Colo. Mar. 5, 2013) (citing Baumann v. American Family Mut. Ins. Co., No. 11-cv-00789, 2012 WL 122850, at *4 (D. Colo. Jan 17, 2012)). See Tadehara v. State Farm Mut. Auto. Ins. Co., Civil Action No. 09-cv-02893-MSK-KMT, 2011 WL 4048782, at *4 (D. Colo. Sept. 12, 2011). This argument should thus likewise be rejected here.

Defendant next asserts that it is entitled to summary judgment on plaintiff's claim premised on § 10-30-1115, C.R.S., because the statute prohibits only the <u>unreasonable</u> delay or denial of a payment of a claim for first-party benefits, and plaintiff here cannot establish that defendant lacked a reasonable basis for its estimate. Defendant contends that the parties disagree over the value of the damage to the roofing, and the value of that damage has not yet been determined by a jury. "Thus, to the extent that there are any 'benefits owed' to Plaintiff at all, the amount owed is fairly debatable, and American Family's conduct cannot be considered unreasonable within meaning of § 10-3-1115." (Docket No. 16 at 17) (citing and discussing Alarcon v. American Family Mut. Ins. Co., 10CA1786 (Colo. App. Sept. 8, 2011) (unpublished)). In addition, defendant relies upon Colorado Division of Insurance Amended Regulation 5-1-14 for the contention that because litigation has been commenced on the claim, there is a

reasonable dispute as a matter of law. Defendant asserts:

> American Family's Inspection of the hail storm damage was prompt and American Family prepared an estimate following the inspection. Indeed, American Family had come to a decision on Plaintiff's claim in, at most, 5 days after the claim was reported. There is no "delay" in this case at all, let alone an unreasonable delay. Likewise, American Family never "denied" the claim. The estimated Damage was simply below Plaintiff's $5,000 deductible.
>
> As noted above, Plaintiff's sole dispute is that the amount of American Family's estimates, along with the impartial umpires [sic] estimate was insufficient. However, Plaintiff cannot point to a single piece of evidence in the record to establish that the estimate was unreasonable. The authority cited above establishes that, as a matter of law, American Family has not unreasonably delayed or denied payment of Plaintiff's claim. Therefore, no violation of § 10-3-1115 has occurred. American Family is thus entitled to summary judgment on Plaintiff's Third Claim for Relief.

(Docket No. 16 at 18). This court, however, agrees with the plaintiff that entry of summary judgment on this claim is improper because there are disputed issues of material fact.

While defendant correctly contends that it may challenge claims that are "fairly debatable," "fair debatability is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case." Sanderson v. American Family Mut. Ins. Co., 251 P.3d 1213, 1218 (Colo. App. 2010). Here, this court finds that there is a genuine dispute as to the material fact of whether defendant unreasonably delayed and/or denied payment when plaintiff claimed WIND (as opposed to merely HAIL) damage. There has been no showing of any unreasonable delay or denial of payment by defendant with respect to its actions regarding plaintiff's initial claim of loss from the hail storm (namely, there was immediate assignment to an adjusting company which inspected the property and explained its

findings to plaintiff, a reinspection upon request by a roofer [Harris] who had inspected the roofs on behalf of plaintiff, review of Harris's additional photos, and the appraisal process, including an inspection and findings of a neutral umpire). However, there is a genuine dispute concerning defendant's subsequent acts when plaintiff later raised the issue of WIND damage from the same storm.

Defendant has supported its motion with an affidavit by its Catastrophe Claim Sr. Adjuster Sharon Larsen (Docket No. 16-3), who was assigned to the plaintiff's claim. With respect to plaintiff's later claim of WIND damage, Larsen asserts in her affidavit that after she received a report from plaintiff's public adjuster, Peter Ridulfo from David Greeson Adjusters, Ltd., in which he alleged that defendant never evaluated the damage caused by "wind surges" associated with the hail storm, she:

> forwarded the photographs and report to Clark, who opined that they did not show wind damage. He also confirmed that there was no wind damage to the roof. He explained that he was on the roof three times and noted no wind damage. He further explained that Mr. Werner's appraiser, who is a roofing engineer, didn't see wind damage. He also stated that the umpire, who is also a roofing engineer did not see wind damage. Clark also stated that there were no recent storms that would have caused widespread wind damage.
>
> []. [She] called Ridulfo on December 28, 2010 and explained that no wind damage was observed in the inspections performed by American Family. Likewise, no wind damage was observed by either appraiser or the umpire. Finally, [she] noted that Plaintiff's own contractor never presented any concerns for wind damage. .As such, [she] told Ridulfo that if wind damage occurred after the appraisal, then it would be a different loss.
>
> [] However, Ridulfo still demanded that all three roofs be replaced, and provided an estimate prepared by Grace Construction in the amount of $133,961.03 for the replacement of three roofs.

(Docket No. 16-3, ¶¶ 24-26).

9

This court agrees with plaintiff which asserts in its response that in her affidavit, Ms. Larsen makes unsupported hearsay assertions that other inspectors, appraisers, and the umpire never saw or reported wind damage, and from such hearsay, Larsen concluded there must not be wind damage. Significantly, defendant has not submitted affidavits or reports by Russ Clark of Engle Martin & Associates (defendant's chosen appraiser), Jaren Tolman (plaintiff's chosen appraiser), and/or the umpire (James Higerd) concerning their alleged observations of no WIND damages. Defendants have submitted Higerd's report of July 23, 2010, but in that report he consistently refers to only HAIL damage; there is no discussion of WIND damage. (Docket No. 16-5).

The only evidence before the court concerning the plaintiff's claim that is based upon alleged WIND damage is the hearsay contained in Larsen's affidavit and the opinion of plaintiff's public inspector, Peter Ridulfo, that the inspectors, appraisers, and umpires were initially concerned with a hail claim and did not inspect for wind damage. With regard to Ridulfo, however, defendant correctly notes that Ridulfo was not involved in the initial inspections or appraisal process and he never spoke with Kerry Heller, Russ Clark, or Jim Higerd who inspected the roofing prior to Ridulfo's involvement. (See Docket No. 18-1, Ridulfo Aff., 34:15-19). In addition, when asked about whether he knew if Heller observed any wind damage, Ridulfo testified, "I think that's – it can't be answered yes or no . . . .,"[2] and he had similar responses when asked the same with regard to Higerd and Clark. (See Docket No. 18-1, Ridulfo Aff., at 19:4-25; 35:18-23; 37:12-25-38:1-25).

---

[2] Ridulfo testified that he did not even know who Kerry Heller is. (Docket No. 18-1, 17:19-24).

It is well established that "hearsay testimony that would be inadmissible at trial may not be included in an affidavit [in support of] summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill'." <u>Thomas v. International Business Machines</u>, 48 F.3d 478, 485 (10th Cir. 1995). <u>See</u> <u>Gross v. Burggraf Const. Co.</u>, 53 F.3d 1531, 1541 (10th Cir. 1995). "An affidavit . . . used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Here, the court finds that the defendant's evidence, namely, Larsen's affidavit, is insufficient to meet defendant's burden on summary judgment.

**WHEREFORE**, for the foregoing reasons, it is hereby

**RECOMMENDED** that American Family's Motion for Partial Summary Judgment on Plaintiff's Bad Faith and Statutory Claims (Docket No. 16) be granted in part and denied in part. More specifically, it is recommended that the motion be granted with respect to Claim 2 (common law claim of bad faith), which was confessed by the plaintiff. In addition, it is recommended that the motion be denied with respect to the statutory claim (Claim 3).

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need**

11

**not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  May 14, 2013                                           s/ Michael J. Watanabe
      Denver, Colorado                            United States Magistrate Judge